IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

NICOLE MICHELLE OLONOVICH,

     Plaintiff,

v.                                    CIV No. 15-599 SCY/WPL

FMR-LLC FIDELITY INVESTMENTS,

     Defendant.

**MEMORANDUM OPINION AND ORDER**

     THIS MATTER is before the Court on Defendant's Second Motion to Dismiss (ECF No. 20), Defendant's Motion to Strike Plaintiff's Reply to Defendant's Motion to Dismiss (ECF No. 34), and Defendant's Motion for Summary Judgment (ECF No. 28).  Having reviewed the motions, accompanying briefing, the relevant law, and being otherwise fully advised, the Court will grant Defendant's motions for the reasons set forth below and dismiss Plaintiff's complaint with prejudice.

**I.    BACKGROUND**

     This is an employment discrimination lawsuit brought by *pro se* Plaintiff Nicole Olonovich against her former employer, Defendant FMR-LLC Fidelity Investments. Defendant previously moved to dismiss Plaintiff's initial complaint for failure to state a claim. ECF No. 4. The Court granted the motion in part to the extent it sought dismissal of the complaint because Plaintiff failed to allege sufficient facts to establish a claim under the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101, *et seq.* ECF No. 12.  The Court further granted Plaintiff leave to file an amended complaint but emphasized that "Plaintiff must plead sufficient facts to support each element of her ADA claim in the [Amended] Complaint itself—attaching supporting

documentation is insufficient." ECF No. 12. Plaintiff filed her amended complaint on October 13, 2015. ECF No. 14. Plaintiff's amended complaint does not set out her allegations by count or number, but instead discusses in narrative format the allegedly discriminatory conduct of Defendant throughout Plaintiff's employment. ECF No. 14. *See* Fed. R. Civ. P. 10 (b) ("A party must state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances."). Broadly speaking, Plaintiff alleges that Defendant acted contrary to the ADA by discriminating and retaliating against her in various ways for taking leaves of absences due to combat related Post-Traumatic Stress Disorder (PTSD). ECF No. 14. Plaintiff also alleges that Defendant created a hostile work environment which ultimately resulted in Plaintiff's constructive discharge. ECF No. 14.

On November 11, 2015, Defendant filed its second motion to dismiss. ECF No. 20. Shortly thereafter, Defendant also filed a motion for summary judgment.  ECF No. 28. Defendant identifies fifteen specific instances of allegedly discriminatory conduct contained in Plaintiff's first amended complaint.  According to Defendant, Plaintiff alleges that Defendant discriminated against her by:

1. Performing a credit check on her (ECF No. 14 at 11);

2. Removing the opportunity to train new hires through "floor-walking" and "double jacking" from 2011-2013 (ECF No. 14 at 2-4, 9, and 13-14);

3. Terminating her employment through constructive discharge (ECF No. 14 at 1-3, 5, and 16);

4. Failing to accommodate her alleged disability by not permitting her to change her scheduled bathroom breaks (ECF No. 14 at 18-20);

5. Giving her an inadequate salary increase in July 2013 (ECF No. 14 at 17);

6.  Issuing an oral warning on February 20, 2013, for attendance that included absences that were protected leave (ECF No. 14 at 8-10);

7.  Violating its Corrective Action Policy by issuing her a written warning in December 2012 instead of an oral warning (ECF No. 14 at 8);

8.  Telling co-workers not to speak to her (ECF No. 14 at 13);

9.  Locating Plaintiff's desk on an "island" (ECF No. 14 at 14-15);

10. Requiring her to provide medical documentation to support her medical leaves (ECF No. 14 at 5, 7, and 19);

11. Designating Plaintiff "not rehireable" [sic] in Defendant's internal personnel system (ECF No. 14 at 18);

12. "Bullying" by a co-worker, who marked one of Plaintiff's customer calls as an "invalid call transfer," which Plaintiff claimed caused her to email a document with confidential customer information to her personal email account and resulted in her receiving a written warning for violating Defendant's confidentiality policy (ECF No. 14 at 11-12);

13. Using a compensation structure that causes systemic discrimination and retaliation because it can be a "hassle" for management to monitor Defendant's record-keeping systems (ECF No. 14 at 20-22);

14. Creating a hostile work environment through all of the actions referenced in the complaint (ECF No. 14 at 5, 10-12, 14, and 23);

15. Reducing her bonuses based on protected leave (ECF No. 14 at 8-9, 17).

ECF No. 5-6.  Upon close review of Plaintiff's first amended complaint, the Court finds that this list accurately represents Plaintiff's allegations.  Plaintiff does not argue in her response that this

list misrepresents the substance of her claims or that the list does not otherwise encompass her allegations.[1]  Accordingly, in order to facilitate the Court's analysis, the Court will utilize this list of allegations in structuring its analysis of the arguments raised in Defendant's respective motions.

Defendant's second motion to dismiss and Defendant's motion for summary judgment address these allegations on multiple fronts.  First, as to allegations 1-3, Defendant argues that any claim related to these allegations should be dismissed under Fed.R.Civ. P. 12(b)(1) because these instances occurred outside the relevant statute of limitations period.  ECF No. 21 at 7.  Second, as to allegations 4-7, Defendant argues that the Court lacks subject matter jurisdiction over these claims because Plaintiff failed to exhaust her administrative remedies.  ECF No. 21 at 9.  Third, Defendant moves to dismiss claims arising from allegations 1, 2, and 8-14 for failure to state a claim because the amended complaint fails to state a claim of disparate impact, hostile work environment, or establish that allegations 1, 2, and 8-12 constitute adverse employment actions.  ECF No. 21 at 11. Finally, Defendant argues that summary judgment should be granted on claims relating to allegation 15.  These contentions will be addressed below.

## II. GENERALLY APPLICABLE LAW

Plaintiff brings her claims pursuant to the ADA.  "[In] order to establish a prima facie case of disability discrimination under the ADA, a plaintiff must demonstrate that he [or she] (1) is a disabled person as defined by the ADA; (2) is qualified, with or without reasonable accommodation, to perform the essential functions of the job held or desired; and (3) suffered discrimination by an employer or prospective employer because of that disability."  *E.E.O.C. v.*

---

[1] Plaintiff does argue that "the argument and evidence provided in the First Amended Complaint do not account for all the evidence and accounts of discrimination, harassment, and bullying in the workplace by [Defendant] against [Plaintiff]."  ECF No. 25 at 2.  However, Plaintiff's vague assertions of unpled instances of discrimination are of no relevance to the present motions.

*C.R. England, Inc.*, 644 F.3d 1028, 1037-38 (10th Cir. 2011) (internal quotation marks and citations omitted). "In order to demonstrate discrimination, a plaintiff generally must show that he has suffered an adverse employment action because of the disability." *Id.* (internal quotation marks and citation omitted).  "In order to establish a prima facie case of retaliation under the ADA, [the plaintiff] must demonstrate (1) that he [or she] engaged in protected opposition to discrimination, (2) that a reasonable employee would have found the challenged action materially adverse, and (3) that a causal connection existed between the protected activity and the materially adverse action." *Id.* at 1051. To the extent this decision relies on cases in the Title VII context, the Court notes that due to the ADA and Title VII's similarities, "decisions under both Acts apply interchangeably to our analysis."  *See West v. New Mexico Taxation and Revenue Dep't.*, 757 F.Supp.2d 1065, 1088 (D.N.M. 2010).

Because Plaintiff is proceeding pro se, the Court must construe her pleadings and arguments liberally but it cannot expand upon her allegations or add facts to support her claims. Courts must review pro se "pleadings and other papers liberally and hold them to a less stringent standard than those drafted by attorneys." *Trackwell v. United States*, 472 F.3d 1242, 1243 (10th Cir. 2007) (citations omitted); *see also Haines v. Kerner*, 404 U.S. 519, 520-21 (1972). However, a pro se litigant's "conclusory allegations without supporting factual averments are insufficient to state a claim on which relief can be based." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). Pro se status does not entitle Plaintiff to different rules of civil procedure.  *See Montoya v. Chao*, 296 F.3d 952, 957 (10th Cir. 2002). The Court may not assume that a pro se plaintiff can prove facts that the plaintiff has not alleged, nor that a defendant has violated laws in ways the plaintiff has not alleged.  *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of*

*Carpenters*, 459 U.S. 519, 526 (1983). The Court may not act as an advocate for a pro se litigant. *See Hall*, 935 F.2d at 1110.

## III. DEFENDANT'S MOTION TO STRIKE

In its motion to strike, Defendant argues that the Court should strike Plaintiff's Reply to Defendant's Second Motion to Dismiss (ECF No. 31) because Plaintiff did not seek leave of the Court to file this document.  ECF No. 34.  Plaintiff's "reply" is actually a surreply, as Plaintiff filed it almost two weeks after Defendant filed its reply that completed briefing on the motion. This District's local rules provide that the "filing of a surreply requires leave of the Court." D.N.M.LR-Civ. 7.4(b).  Plaintiff acknowledges that she did not seek leave of the Court to file her surreply.  ECF No. 37. Plaintiff requests that this failure be excused due to her status as a pro se litigant. ECF No. 37. However, as noted above, pro se status does not entitle Plaintiff to a different set of rules. *See Montoya*, 296 F.3d at 957 (relating to civil procedure rules).  Further, Plaintiff does not identify any new information in Defendant's reply to the motion to dismiss that would have necessitated a surreply.  *See Lopez v. Garcia*, 1 F.Supp.2d 1404, 1406 (D.N.M. 1997) (denying motion to file surreply because there was no new information contained in the defendant's reply and the surreply "would be nothing more than surplusage"). Accordingly, Plaintiff's surreply (ECF No. 34) will be stricken.

## IV. MOTION TO DISMISS UNDER FED.R.CIV.P. 12(b)(1)

### A.  Failure to Exhaust

Defendant argues that Plaintiff failed to exhaust administrative remedies in regard to some of her claims because Plaintiff did not include these allegations in her EEOC charge. ECF No. 21 at 9.  Specifically, Defendant argues that Plaintiff  failed to include allegations that Defendant refused to accommodate her disability by not permitting her to modify her bathroom

breaks (allegation #4), gave Plaintiff an inadequate salary increase in July 2013 (allegation #5), issued an oral warning relating to absenteeism for absences that were protected leave (allegation #6), and issued Plaintiff a written warning in December 2012 in violation of Defendant's corrective action policy (allegation #7).

"[A] plaintiff must exhaust her [or his] claims before the EEOC as a prerequisite to federal court jurisdiction over her [or his] ADA claims." *MacKenzie*, 414 F.3d 1266, 1274 (10th Cir. 2005). "[E]ach discrete incident of alleged discrimination or retaliation constitutes its own unlawful employment practice for which administrative remedies must be exhausted." *Jones v. UPS, Inc.*, 502 F.3d 1176, 1186 (10th Cir. 2007). It is insufficient to claim that challenged acts are reasonably related to claims made before the EEOC. *Eisenhour v. Weber County*, 744 F.3d 1220, 1226-27 (10th Cir. 2014). Instead, the charge filed with the EEOC must contain facts concerning the discriminatory and retaliatory actions underlying each claim. *Jones*, 502 F.3d at 1186.  Ultimately, the "plaintiff's claim in federal court is generally limited by the scope of the administrative investigation that can reasonably be expected to follow the charge of discrimination submitted to the EEOC." *Eisenhour*, 744 F.3d at 1226-27.  In ruling on this issue pursuant to Fed.R.Civ.P. 12(b)(1), it is proper for the Court to consider the administrative pleadings. *See Green v. Donahoe*, 760 F.3d 1135, 1140 (10th Cir. 2014).

The specific allegations of retaliatory and harassing behavior Plaintiff made in her EEOC charge include Defendant conducting a credit check on Plaintiff, her possible termination for use of profanity, denial of quarterly bonuses due to absenteeism, denial of a schedule change for medical reasons, and her segregation from other employees. ECF No. 21-1. Plaintiff subsequently amended her charge with allegations that she was constructively discharged and to assert that she was discriminated against due to her sex and national origin. ECF No. 21-2.

7

However, nowhere in the charge does Plaintiff allege, must less mention, the oral and written warnings she received or that she received an inadequate salary increase. *See Green*, 760 F.3d at 1141 (concluding that the plaintiff's claims were unexhausted where the plaintiff's EEOC charge did not mention or provide a description of the allegations). Thus, the Court agrees with Defendant that Plaintiff failed to include sufficient facts in her charge regarding allegations five through seven.

Further, while Plaintiff states in her EEOC charge that she was denied a schedule change, the Court does not construe this allegation to incorporate her subsequent allegation regarding modification of her bathroom breaks.  In her charge, Plaintiff states that Defendant denied her request for a schedule change and forced her to provide medical documentation for the requested change. This is consistent with the allegations Plaintiff later made in her complaint regarding her request for "partial shift swaps" to make up for time Plaintiff missed during her leaves of absence, as well as Defendant's request for medical documentation for the change and Defendant's subsequent denial of the request.  ECF No. 14 at 19. However, the charge lacks any facts or description supporting a claim that Defendant discriminated or retaliated against Plaintiff by refusing to modify her bathroom breaks. *See Green*, 760 F.3d at 1141.  Accordingly, the Court concludes that Plaintiff failed to exhaust her administrative remedies regarding these claims and the Court is without jurisdiction to consider them. Defendant's motion to dismiss is therefore granted with respect to allegation four.

Further, the Court concludes *sua sponte* that Plaintiff did not exhaust administrative remedies in regard to allegation eleven that Defendant designated her "not rehireable."[2] *See*

---

[2] The Court notes that Plaintiff does not specifically allege in her Complaint that Defendant designated her "not rehireable." ECF No. 14 at 18. Plaintiff does reference a letter she received from Defendant following an inquiry after she left employment with Defendant and asserts that this letter was in response to her inquiry as to whether Defendant designated her "hireable" or "not rehireable." ECF No. 14 at 18-19.  But the letter Plaintiff attaches does

*Hardiman v. Reynolds*, 971 F.2d 500, 502 (10th Cir. 1992) ("[A] court must raise a defense sua sponte if that defense implicates the court's subject matter jurisdiction.").  Plaintiff did not include any such allegation in either her first charge with the EEOC or the amended charge. *See* ECF No. 21-1, 21-2.  Accordingly, Plaintiff failed to exhaust administrative remedies in regard to this allegation.  *See Cole v. McHugh*, 855 F.Supp.2d 1253, 1266 (D. Colo. 2012) (concluding that the plaintiff failed to exhaust administrative remedies in regard to allegedly negative references to the plaintiff's prospective employers).

## V. MOTION TO DISMISS CLAIMS RELATED TO ALLEGATIONS 1, 2, and 8-14 UNDER FED.R.CIV.P. 12(b)(6)

Defendant raises three issues as to why claims arising under allegations 1, 2, 8-10, and 12-14 should be dismissed under Rule 12(b)(6).  First, Defendant contends that allegations 1, 2, 8-10, and 11-12[3] do not constitute adverse employment actions. ECF No. 21 at 14. Second, Defendant contends that allegation 13 fails to state a claim of disparate impact. ECF No. 21 at 11. Third, Defendant contends that allegation 14 fails to state a claim of a hostile work environment. ECF No. 21 at 13. The Court will address these in turn.

Rule 12(b)(6) authorizes a court to dismiss a complaint for "failure to state a claim upon which relief can be granted."  Fed.R.Civ.P. 12(b)(6). "[F]or purposes of resolving a Rule 12(b)(6) motion, we accept as true all well-pleaded factual allegations in a complaint and view these allegations in the light most favorable to the plaintiff." *Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009). To survive a motion to dismiss, a complaint must contain sufficient

---

not indicate that Defendant designated Plaintiff "not rehireable." ECF No. 14 at 67. The letter from Defendant's legal department recounts a phone call Plaintiff placed to Defendant's human resources department which Plaintiff attempted to record.  Defendant instructed Plaintiff that all future communications to Defendant should be made in writing.  Nevertheless, despite not specifically alleging that she was designated "not rehireable," the Court, mindful of its duty to construe pro se pleadings liberally, will assume that Plaintiff intended to allege that Defendant designated her not rehireable.

[3] The Court does not consider Defendant's argument in regard to allegation number eleven because the Court dismissed claims arising from this allegation above.

factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*quoting Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  While detailed factual allegations are not required, the plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Twombly*, 550 U.S. at 555. The plaintiff must "plead[] factual content that allows the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Burnett v. Mortg. Elec. Registration Sys., Inc.*, 706 F.3d 1231, 1235 (10th Cir. 2013). In other words, the "[f]actual allegations must be enough to raise a right to relief above the speculative level[.]" *Twombly*, 550 U.S. at 555.  In the context of discrimination claims at the Rule 12(b)(6) stage, the Plaintiff is not required to plead facts sufficient to establish a prima facie case. *Id.* Nevertheless, the elements necessary to establish a prima facie case "help to determine whether the plaintiff has set forth a plausible claim."  *Id.*

### A.  Adverse Employment Action

Defendant argues that Plaintiff fails to state a claim of discrimination or retaliation because the allegedly discriminatory acts do not constitute adverse employment actions as a matter of law.  ECF No. 21 at 14. These allegations include Defendant performing a credit check on Plaintiff (allegation #1), removing Plaintiff's opportunity to train new hires through "floor-walking" and "double-jacking" from 2011-2013 (allegation #2), directing co-workers not to speak to Plaintiff (allegation #8), isolating Plaintiff's desk from other co-workers (allegation #9), requiring Plaintiff to provide medical documentation to support her medical leaves (allegation #10), and "bullying" by a co-worker who marked Plaintiff's customer calls as an "invalid call transfer," which in turn caused Plaintiff to receive a written warning when she emailed a

document related to the call with confidential customer information to her personal email account (allegation #12).

As an initial matter, the Court will first clarify the closely related but different standards of "adverse action" under discrimination and retaliation causes of action. While Defendant is correct that establishing a prima facie case of discrimination under the ADA requires a plaintiff to show that he or she suffered an adverse employment action, *E.E.O.C. v. C.R. England, Inc.*, 644 F.3d 1028, 1037-38 (10th Cir. 2011), in order to establish a prima facie case of retaliation, the "plaintiff must show that a reasonable employee would have found the challenged action materially adverse." *Proctor v. United States Parcel Service*, 502 F.3d 1200, 1208 (10th Cir. 2010). In other words, in a discrimination claim, an "[a]dverse employment action includes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits," *Piercy v. Maketa*, 480 F.3d 1192, 1203 (10th Cir. 2007) (internal quotation marks and citation omitted), whereas the plaintiff's burden in a retaliation claim is to show that the challenged action "might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Reinhardt v. Albuquerque Public Schools Bd. of Educ.*, 595 F.3d 1126, 1133 (10th Cir. 2010). Thus, adverse action for retaliation purposes "is not limited to discriminatory actions that affect the terms and conditions of employment." *Id.* (internal quotation marks and citation omitted). Instead, it may include "[a]cts that carry a significant risk of humiliation, damage to reputation, and a concomitant harm to future employment prospects." *Id.* (internal quotation marks and citations omitted). Under both standards, however, "mere inconvenience or an alteration of job responsibilities" will not suffice. *Reinhardt*, 595 F.3d at

11

1133 (internal quotation marks and citation omitted); *Piercy*, 480 F.3d at 1203 (internal quotation marks and citation omitted).

The differing standards for retaliation and non-retaliation claims do not affect the outcome of Plaintiff's allegations 1, 2, 8-10, and 12, however, because, even taken as true, these allegations do not establish adverse actions under either standard as a matter of law.  Plaintiff's first allegation, that Defendant discriminated and retaliated against her by performing a credit check on her, fails to establish either a significant change in her employment status or an action by Defendant that could have dissuaded a reasonable worker from making or supporting a charge of discrimination. Similarly insufficient is Plaintiff's allegation #10 that Defendant discriminated and retaliated against her by requesting documentation to support her ADA accommodations. *See Tayag v. Lahey Clinic Hosp., Inc.*, 677 F.Supp.2d 446, 453 (D. Mass. 2010) (rejecting argument that an employer's request for documentation to support medical leave constituted adverse employment action); *Koch v. Schapiro*, 759 F.Supp.2d 67, 76 (D.D.C. 2011) ("[A]n employer's request for medical documentation for the purpose of assessing an employee's credibility or determining an appropriate accommodation is not an adverse employment action."). Accordingly, these alleged actions cannot support a claim for discrimination or retaliation.

With regard to Plaintiff's allegation #12, the alleged bullying consisted of a co-worker flagging a call taken by Plaintiff as an "invalid call transfer" and to "notify [a] manager of urgent feedback."  ECF No. 14 at 11.  Plaintiff alleges that she was written up as a result of this "bullying" because she sent a copy of her co-worker's complaint to her personal email.  "Co-worker hostility or retaliatory harassment constitutes an adverse employment action only if it is sufficiently severe." *Medina v. Income Support Div. of New Mexico*, 413 F.3d 1131, 1136 (10th

Cir. 2005); *see also Gunnell v. Utah Valley State College*, 152 F.3d 1253, 1265 (10th Cir. 1998) (stating that a few actions taken by co-workers, "which generally seem to involve incidents of rudeness" are insufficient to support a claim of retaliation). According to Plaintiff's own allegations, this non-supervisory co-worker "was just irritated taking the call [and] therefore he inaccurately wrote her up." ECF No. 14 at 12. This co-worker's complaint about Plaintiff is among the "ordinary tribulations of the workplace" and does not constitute an adverse action under either standard. *Gunnell*, 152 F.3d at 1265.

Plaintiff's eighth allegation that Defendant directed co-workers to not speak to her and isolated her by moving her desk is also insufficient to establish an adverse employment action for purposes of her discrimination claim or retaliation claim. For purposes of Plaintiff's discrimination claim, the Tenth Circuit has previously held that this type of "shunning" behavior does not constitute an adverse employment action. *See MacKenzie v. City and Cnty. of Denver*, 414 F.3d 1266 (10th Cir. 2005) (relying on *Flannery v. Trans World Airlines, Inc.*, 160 F.3d 425, 428 (8th Cir. 1998), for proposition that "shunning is not an adverse employment action where the plaintiff did not allege that the ostracism resulted in reduced salary, benefits, seniority, or responsibilities); *Heno v. Sprint/United Management Co.*, 208 F.3d 847, 857 (10th Cir. 2000) (concluding that the plaintiff's supervisor and co-worker's "chilly manner toward her, which made her feel isolated"  and moving her desk to a different location did not constitute an adverse employment action). Plaintiff makes no allegation regarding how this behavior affected her salary, benefits, seniority, or responsibilities.  Therefore, this allegation fails to establish an adverse employment action in regard to her discrimination claim.

Considering allegation #8 in relation to Plaintiff's claim of retaliation, the Tenth Circuit has recognized that "co-worker hostility or retaliatory harassment, if sufficiently severe, may

constitute 'adverse employment action' for purposes of a retaliation claim." *Gunnell v. Utah Valley State Coll.*, 152 F.3d 1253, 1264 (10th Cir. 1998). In *Burlington Northern*, the United States Supreme Court clarified that to constitute actionable retaliation, the challenged acts must have produced "an injury or harm." *Burlington Northern and Santa Fe Ry. Co. v. White*, 548 U.S. 53, 67 (2006). The Court in *Burlington* stated, however, that "snubbing by supervisors and co-workers" are among the examples of "petty slights or minor annoyances" that do not rise to the level of material adversity sufficient to state a claim for retaliation. *Id.* at 68.  According to one district court, such snubbing behavior may include, in some instances, directives from a supervisor to co-workers telling them not to speak to the plaintiff. *See E.E.O.C. v. Body Firm Aerobics, Inc.*, No. 2:03-846, 2006 WL 1993784, *7 (D.Utah. 2006) (unpublished) (holding that a supervisor's directive to the plaintiff's co-workers not to speak to her did not constitute a materially adverse action for purposes of retaliation claim because the snubbing did not affect her "ability to perform necessary job functions"). Similarly, the Tenth Circuit has previously held that suffering ostracism from co-workers, even when combined with isolating an employee's desk does not constitute retaliatory conduct.  *See Heno*, 208 F.3d at 857 (concluding that an employer's act of moving the plaintiff's desk to a different location when the plaintiff returned from sick leave and short-term disability did not constitute retaliatory conduct).

In the present case, Plaintiff fails to allege sufficient facts that her desk assignment or the snubbing she experienced was of the requisite severity necessary to state a claim of retaliation. Regarding her desk assignment, Plaintiff asserts that Defendant initially placed her on an "island" but then, at the direction of Human Resources to place her desk within the vicinity of her team, moved her from the island, to somewhere else she did not want to sit.  Specifically, Plaintiff states that three vacant desks near her kept her isolated from her team and that, when

spots opened up where she wanted to sit, management denied her request to relocate.  The Court concludes that Plaintiff fails to state a claim that Defendant retaliated against her in the assignment of her work location.  Similarly, Plaintiff's allegation that a supervisor directed co-workers not to talk to her also fails to state a claim.  Notably, Plaintiff makes no allegation that her co-workers actually refused to speak to her or that management took any sort of action against co-workers who chose to speak to her.  ECF No. 14 at 13.  Nor does she allege facts regarding how locating her work station and directing employees not to speak to her affected her performance of the basic duties of her job or otherwise produced injury or harm apart from her being unable sit with co-workers with whom she had positive interactions. Accordingly, Plaintiff's allegations that Defendant isolated her from her co-workers by directing them not to speak to her, by choosing her work station, or a combination of the two, are insufficient to support her claim of retaliation.

Plaintiff's second allegation that Defendant retaliated against her by removing her opportunity to train new employees, however, is slightly more nuanced.  Plaintiff alleges that Defendant removed these opportunities following her first return from a medical leave of absence and that such opportunities could potentially affect an employee's eligibility for merit raises and bonuses. ECF No. 14 at 4, 8-9, 13-14.  To the extent that Plaintiff claims that the opportunity to train new employees itself was a materially adverse action, the Court agrees with Defendant that this was a "mere alteration of job responsibilities" and insufficient to establish a materially adverse action.  *See Reinhardt*, 595 F.3d at 1133 (internal quotation marks and citation omitted).  Further, although Plaintiff alleges that the loss of training opportunities *could* affect bonus amounts, Plaintiff's allegations regarding the reduction of her bonus center on her

15

absences, not on the loss of training opportunities.  Plaintiff's failure to allege that the loss of training opportunities *actually* resulted in a loss of benefits is fatal to this claim.

### B.  Hostile Work Environment and Constructive Discharge

Plaintiff claims that she was subjected to a hostile work environment. The allegations Plaintiff relies on to support this claim mirror the allegations Plaintiff relied on in claiming disparate treatment discrimination and retaliation.  The Court concluded that the allegations underlying these claims failed to establish adverse action; for that reason alone, Plaintiff's claim of a hostile work environment also must fail. *See Juarez v. Utah*, 263 Fed. App'x. 726, 739 (10th Cir. 2008) (unpublished) (concluding that where allegations failed to establish adverse action for actionable retaliation, the plaintiff's claim of hostile work environment based on the same allegations would be dismissed because "a reasonable jury could not find [the allegations] to be so severe or pervasive as to alter the conditions of [the plaintiff's] employment or impede her ability to do her job.").[4]

In addition, however, Plaintiff fails to allege facts sufficient to establish any connection between her allegations and her disability.  "In determining whether an actionable hostile work environment existed, we look to all the circumstances, to see if the workplace was permeated with discriminatory intimidation, ridicule, and insult sufficiently severe or pervasive to alter the conditions of the plaintiff's employment, and if the plaintiff was subjected to this abusive environment because of her [protected class]."  *Montes v. Vail Clinic, Inc.*, 497 F.3d 1160, 1169-

---

[4] The Court's decision relies upon *Juarez* and other unpublished opinions in analyzing the issues presented. A court can rely on an unpublished opinion to the extent its reasoned analysis is persuasive in the case before it. *See* 10th Cir. R. 32.1(A) ("Unpublished opinions are not precedential, but may be cited for their persuasive value."). The Tenth Circuit has stated: "In this circuit, unpublished orders are not binding precedent, . . . and . . . citation to unpublished opinions is not favored . . . . However, if an unpublished opinion . . . has persuasive value with respect to a material issue in a case and would assist the court in its disposition, we allow a citation to that decision." *United States v. Austin*, 426 F.3d 1266, 1274 (10th Cir. 2005). The Court finds that these unpublished opinions have persuasive value with respect to a material issue, and will assist my analyses and the disposition of this case.

70 (10th Cir. 2007) (quotations, citation, and alterations omitted).  Plaintiff alleges no facts that her supervisors or co-workers insulted or ridiculed her due to her alleged disability.  In fact, nowhere does Plaintiff allege any facts that her disability was negatively commented on by anyone in her work environment.  *See Hunt v. Central Consol. School Dist.*, 951 F.Supp.2d 1136, 1215-16 (D.N.M. 2013) (dismissing hostile work environment claim where the complaint lacked "any facts about discriminatory comments, or other discriminatory harassment relating to the [p]laintiffs' [protected class.]").  Accordingly, her hostile work environment claim must be dismissed.

Furthermore, while it is true that "a hostile work environment claim can become so severe that it gives rise to a constructive discharge," *id.* at 1216 (internal parenthesis, quotation marks, and citation omitted),  the Court concludes that because Plaintiff's claim of constructive discharge is premised on her claim of a hostile work environment, this claim must also fail.  *See id.* ("[G]iven that the Court has recognized that, without sufficient grounds to find a hostile work environment, a constructive-termination claim also fails, the Court will also dismiss the constructive termination basis for the [] claim.").

### C.  Disparate Impact

Plaintiff alleges that Defendant's "compensation structure causes systemic discrimination and retaliation toward disabled people who may have valid attendance issues." ECF No. 14 at 21. The Court understands Plaintiff's allegations on this point to be that Defendant utilizes an internal system to track attendance.  Bonuses and other similar types of merit-based compensation can be awarded to individual sites—such as the Albuquerque office—based on employee compliance with attendance policies, as well as other productivity based metrics. ECF No. 14 at 20. Plaintiff alleges that there is the "potential for technical and mechanical error" in

correctly using the internal system and that there is no way to retroactively adjust entries to account for human error in logging attendance.  ECF No. 14 at 21. Plaintiff alleges that this structure harms disabled employees who may be utilizing protected medical leave because it creates additional monitoring responsibilities for Defendant to ensure no internal errors occurred and further incentivizes Defendant's individual sites to force out disabled individuals whose attendance numbers negatively impact their attendance statistics. ECF No. 14 at 21. The Court understands these allegations to be asserting a claim of disparate impact.

Defendant argues that Plaintiff fails to state a claim of disparate impact. "A plaintiff purporting to assert a disparate impact claim faces a formidable pleading burden." *Grider v. City and County of Denver*, No. 10-00722, 2011 WL 721279, 4 (D. Colo. Feb. 23, 2011) (unpublished).  "To prove a case of disparate impact discrimination, the plaintiff must show that a specific policy caused a significant disparate effect on a protected group." *Cinnamon Hills Youth Crisis Center, Inc. v. Saint George City*, 685 F.3d 917, 922, (10th Cir. 2012) (internal quotation marks and citation omitted).  The plaintiff "must point to both a significant disparate impact and a particular policy or practice that caused the disparity."  *See Pippen v. Burlington Oil and Gas Co.*, 440 F.3d 1186, 1200 (10th Cir. 2006).

The Court agrees that Plaintiff failed to allege facts sufficient to state a claim of disparate impact.  While Plaintiff does point to a specific practice or policy, her allegations as to the impact of this policy are speculative and fail to create an inference that this policy creates a significant disparate impact on disabled employees.  As the Tenth Circuit has explained, a prima facie claim of disparate impact must show that the "policy caused a significant disparate impact on a protected group." *Carpenter*, 456 F.3d at 1187. The Court understands this to require allegations of an actual disparity between those with the protected status and those without the

18

status. *See Hunt*, 951 F.Supp.2d at 1184. Plaintiff's claim of a disparate impact, however, rests on allegations of the "potential for technical and mechanical error" in the system and the "hassle" to Defendant to properly monitor it.  Plaintiff's allegations fall short, however, of alleging facts as to how the potential for human error disproportionately affects disabled employees as opposed to employees in general. Plaintiff makes conclusory and speculative allegations, but does not allege facts sufficient to support her claim that Defendant's policy has a significant disparate impact on disabled employees. Accordingly, the Court will dismiss Plaintiff's claims to the extent they allege a claim of disparate impact.

## V. MOTION FOR SUMMARY JUDGMENT

Defendant moves for summary judgment on Plaintiff's claim that Defendant reduced her bonuses in retaliation for Plaintiff taking protected leaves of absence.  Plaintiff alleged that upon returning from her first protected leave of absence in 2011, she was given a written warning for her attendance and informed that her next bonus would be withheld.  ECF No. 14 at 8. Plaintiff alleged that she was also informed that her bonus for the quarter in which she was on protected leave would be reduced due to her attendance.  ECF No. 14 at 8.  Plaintiff made similar allegations as to her bonus issued on June 15, 2013, which she compared to her bonus received on August 26, 2013—a time period in which she did not take a leave of absence—showing a higher percentage bonus.  ECF No. 14 at 17. Defendant argues in its motion that Plaintiff cannot establish any causal connection that her bonuses were impermissibly reduced due to her protected leaves of absence.

### A.  Undisputed Material Facts

As an initial matter, the Court notes that Plaintiff failed to properly comply with our summary judgment procedures. Under D.N.M.LR-Civ. 56.1(b), a non-movant's response to a

summary judgment motion "must contain a concise statement of the material facts cited by the movant as to which the non-movant contends a genuine issue does exist." This requires the non-movant to number each fact in dispute, refer with particularity to those portions of the record upon which the non-movant relies, and identify the movant's fact by number which the non-movant claims is in dispute.  *Id.*  "All material facts set forth in the memorandum [in support of summary judgment] will be deemed undisputed unless specifically controverted."  *Id.* Nonetheless, bearing in mind that Plaintiff is a pro se litigant, the Court has closely reviewed Plaintiff's response, as well as the voluminous documents Plaintiff attached to her complaint, and has determined that the following are the undisputed material facts before the Court.

Defendant employed Plaintiff as a customer service associate handling in-bound calls and assisting customers with their health and insurance benefits. Undisputed Facts (UF) No. 2 (ECF No. 29); ECF No. 14 at 3. During this time, Defendant offered an incentive compensation plan under which employees were eligible for quarterly bonuses, subject to certain terms and conditions. UF No. 3; ECF No. 29-1.  According to the compensation plan documents attached to Defendant's motion, if a team of employees achieved their customer experience index goals, the team would be awarded an overall team allocation that would then be distributed to the individual team members.  ECF No. 29-1 at 3, 29-2 at 5; ECF No. 32. Individual team members were awarded anywhere from zero to twenty percent of the overall team allocation based on a manager's assessment of the individual's contributions to the team. ECF No. 29-1 at 3, 29-2 at 5; ECF No. 32. The manager's assessment was based on various productivity factors such as ownership for customer experience, operational metrics, approach to work and availability for customers, team support and engagement, leadership and contribution to continuous improvement, and ownership of personal development.  ECF Nos. 29-1 at 3, 29-2 at 5. Both

20

compensation plans operated on a quarterly system with, for instance, the first quarter (Q1) beginning on February 1st of the respective year and concluding on April 30th of that year.  ECF Nos. 29-1 at 5, 29-2 at 8. Both plans further provided that "[a] participant will receive credit for a month of service if the Participant is actively employed in the role on or before the 15th of the month through the last day of the Plan month." ECF Nos. 29-1 at 5, 29-2 at 8. Finally, both plans provided that "Participants on an approved leave of absence ('LOA') are eligible for a pro-rated bonus amount based on the active months of service[.]" ECF Nos. 29-1 at 6, 29-2 at 10. An active month of service was defined as "a month in which the amount of time that the Participant is unavailable to work due to the LOA is less than 50% of the month." ECF Nos. 29-1 at 6, 29-2 at 10.

In 2013, Plaintiff took a medical leave of absence from March 11, 2013, through May 6, 2013. UF No. 13; ECF No. 14-1 at 21. Because the first quarter ended on April 30th, a portion of this leave occurred in the first quarter and a portion occurred during the second quarter.  For the first quarter of 2013, Plaintiff received a ten percent bonus. UF No. 15; ECF No. 14-1 at 64. For the second quarter of 2013, Plaintiff received a seventeen percent bonus. UF No. 15; ECF No. 14-1 at 66. Plaintiff filed her first EEOC charge in September 2013 and her amended EEOC charge in October 2014. UF No. 9; ECF Nos. 21-1, 21-2.

### B.  Standard of Review

"The Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). There is no genuine dispute as to any material fact unless the evidence is such that a reasonable jury could return a verdict for the non-moving party.  *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 248 (1986). In reviewing a motion for summary judgment, the Court views

the evidence and all reasonable inferences therefrom in the light most favorable to the non-moving party.  *S.E.C. v. Thompson*, 732 F.3d 1151, 1156-57 (10th Cir. 2013) (quotation omitted). Initially, the party seeking summary judgment has the burden of showing that there is no genuine dispute as to any material fact.  *See Shapolia v. Los Alamos Nat'l Lab.*, 992 F.2d 1033, 1036 (10th Cir. 1993). Once the moving party meets its burden, the non-moving party must show that genuine issues remain for trial. *Id.*

In the employment discrimination context this means that "a plaintiff initially must raise a genuine issue of material fact on each element of the prima facie case." *MacKenzie*, 414 F.3d at 1274. "If a plaintiff establishes a prima facie case, the burden shifts to the defendant to offer a legitimate nondiscriminatory reason for its employment decision." *Id.* "Should the defendant articulate a nondiscriminatory reason, the burden shifts back to plaintiff to show a genuine issue of material fact as to whether defendant's reason for the discharge is pretextual." *Id.*

### C.  2011 Bonus

Defendant argues that any claims arising from Plaintiff's 2011 bonus should not be considered because Plaintiff did not timely file an EEOC charge in regard to this bonus.[5]  "[T]he ADA requires a plaintiff to exhaust her administrative remedies before filing suit." *Jones v. United Parcel Serv., Inc.*, 502 F.3d 1176, 1183 (10th Cir. 2007). One aspect of exhaustion is the timely filing of the charge with the EEOC. *Id.*; *see also West v. New Mexico Taxation and Revenue Dep't.*, 757 F.Supp.2d 1065, 1088 (D.N.M. 2010); *Green v. Donahoe*, 760 F.3d 1135, 1140 (10th Cir. 2014) (stating that one aspect of exhaustion of administrative remedies in the Title VII context is submitting the "administrative charge in a timely fashion").  As discussed above, "each discrete incident of alleged discrimination or retaliation constitutes its own

---

[5] According to documents attached to Plaintiff's complaint, it appears Plaintiff took her first leave of absence on July 12, 2011 through August 15, 2011.  ECF No. 14-1 at 16.

unlawful employment practice for which administrative remedies must be exhausted." *Jones* 502 F.3d at 1186 (internal quotation marks and citation omitted). "[A] plaintiff normally may not bring a[n]…action based upon claims that were not part of a timely-filed EEOC charge[.]" *West*, 757 F.Supp.2d at 1088 (internal quotation marks and citation omitted). Therefore, in order to pursue claims related to her 2011 bonus amount, Plaintiff must show that she timely exhausted her administrative remedies in regard to this allegedly discriminatory conduct.

The deadline for timely filing an administrative charge is 300 days from the allegedly unlawful employment action. *See West*, 757 F.Supp.2d at 1088. "An employee receives notice of an adverse employment decision when a particular event or decision is announced by the employer." *Proctor v. United States Parcel Service*, 502 F.3d 1200, 1206 (10th Cir. 2007) (internal quotation marks and citation omitted). In this case, by Plaintiff's own allegations, Plaintiff was made aware upon her return from her first LOA in late-summer/early-fall of 2011 that her bonus would be affected by her leave of absence. ECF No. 14 at 8. Plaintiff's first charge with the EEOC was filed on September 14, 2013. Accordingly, Plaintiff did not timely file an EEOC charge regarding this alleged instance of discrimination.

Nonetheless, Plaintiff argues that her claims regarding the 2011 bonus should be considered because she did not know that Defendant's conduct was unlawful until she consulted with the EEOC. ECF No. 25. The Court is unpersuaded by Plaintiff's argument for two reasons. First, to the extent that Plaintiff is arguing that Defendant's actions constitute a "continuing violation," that theory is no longer viable. *See Davidson v. America Online, Inc.*, 337 F.3d 1179, 1184 (10th Cir. 2003) ("[A] continuing violation theory…is not permitted for claims against discrete acts…[t]hus, a claimant must file a charge…within the appropriate limitations period as to each such discrete act…that occurred."). Second, while the United States Supreme Court has

held that the failure to timely file an administrative charge is akin to a statute of limitations and therefore may be adjusted by equitable doctrines such as waiver, estoppel, and equitable tolling, *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393 (1982), Plaintiff does not argue any of these doctrines; instead, she simply asserts that she was unaware of the alleged unlawfulness of Defendant's actions.[6] However, as the Tenth Circuit has explained "the clock starts running when the plaintiff first knew or should have known of his [or her] injury, whether or not he [or she] realized the cause of his [or her] injury was unlawful." *Almond v. Unified School Dist. No. 501*, 665 F.3d 1174, 1176 (10th Cir. 2011).  It is undisputed that Plaintiff received her bonus when she returned from her leave of absence and was thus aware of Defendant's decision regarding the amount of the bonus. ECF No. 14-1 at 8.  Accordingly, the 300 day timeframe to timely file the EEOC charge began running and expired long before Plaintiff filed the 2013 charge.

### D.  2012 Bonus

Defendant argues in regard to Plaintiff's 2012 third quarter bonus that the undisputed material facts establish that Plaintiff took voluntary time off during this quarter and that it was this voluntary leave that negatively impacted her bonus.  A review of Plaintiff's complaint demonstrates that Plaintiff failed to specifically allege that Defendant reduced any bonus during 2012 in connection with protected activity. Plaintiff does allege that she exchanged emails with her supervisor at the time regarding allegedly incorrect absences placed in her file. ECF No. 14 at 9.  Plaintiff states that "[t]hese errors were pointed out because there was a threat of bonus being taken away due to the attendance policy."  ECF No. 14 at 9.  Plaintiff also alleges that a

---

[6] Even had Plaintiff sought to equitably toll the statute of limitations, the Court is doubtful of its success. "Equitable tolling is not warranted where an employee is aware of all the facts constituting discriminatory treatment but lacks direct knowledge of the employer's subjective discriminatory purpose." *West*, 757 F.Supp.2d at 1095 (internal quotation marks and citation omitted).

different supervisor then attempted to write Plaintiff up due to the absences but was informed by

the human resources department that the supervisor could only give Plaintiff an oral warning.

ECF No. 14 at 10. Plaintiff's general complaints about whether Defendant properly recorded her

absences, however, are different than the allegation Plaintiff needed to, but did not, make—that

Defendant reduced a 2012 bonus in retaliation for her taking a medical leave of absence.[7]

Plaintiff's failure to make this allegation is fatal to her claim that Defendant reduced her 2012

bonuses in violation of the ADA.

Moreover, Defendant's employment compensation plan contemplated lower bonuses for

employees who had significant leave of absences during the quarter for which the bonus was

given.  As set forth in the next section, such a compensation plan is legal and Plaintiff makes no

challenge to it.  Therefore, to prevail on her 2012 bonus claims, Plaintiff would have to present

evidence that Defendant reduced her 2012 bonuses not as contemplated in its compensation plan

but, rather, in retaliation for her taking protected leave.  Plaintiff has presented no such evidence.

### E.  2013 Bonus

As noted above, at the summary judgment stage, Plaintiff initially carries the burden of

establishing a prima facie case of discrimination. *MacKenzie*, 414 F.3d at 1274.  Defendant

argues that Plaintiff's claims regarding her 2013 bonus fail on the third element of the prima

facie claim—that Plaintiff has not carried her burden to show that she received a lower bonus

than she should have as a result of discriminatory or retaliatory action. ECF No. 29 at 8. On this

point, Defendant contends that no basis exists to infer that it did not pro-rate Plaintiff's bonus in

accordance with the compensation plan. Alternatively, Defendant argues that it has established a

---

[7] At one other point in her complaint, Plaintiff mentions a 2012 bonus potentially being affected by a written warning she received due to a violation of the company's confidentiality policy. ECF No. 14 at 12.  The Court, however, addressed this claim above in its analysis of Defendant's motion to dismiss.

legitimate, non-discriminatory reason for Plaintiff's bonus amounts and that there is no evidence that Defendant's proffered reason is pretextual. ECF No. 29 at 9.

Plaintiff makes no argument or allegation that there is anything unlawful or inherently discriminatory about Defendant's compensation plan itself. *Cf. Sommer v. The Vanguard Group*, 461 F.3d 397, 389 (3d Cir. 2006) (holding that "[i]f [a bonus] rewards employee production, then proration for FMLA absences is generally allowed"). Instead, Plaintiff claims that her bonus amount was lessened in retaliation for her taking protected leave. This is an important distinction.  Defendant's compensation plan contemplates that employees who do not have one or more active months of service during a quarter (regardless of the reason for their absence) will receive lower bonuses than they would have received had all of their months of service for a quarter been active.  Given this compensation plan, which Plaintiff does not challenge, an employee with significant absences during a quarter should expect to receive a lower bonus for that quarter.  The lower bonus is not the product of retaliation for the absences but, rather, what the compensation plan contemplates.

Regardless, for purposes of this issue, the Court will assume that Plaintiff made a prima facie showing because it is clear that Defendant has offered a legitimate nondiscriminatory reason for Plaintiff's bonus and Plaintiff has failed to rebut Defendant's showing with evidence of pretext. First, Defendant contends that it complied with its compensation plan in reducing Plaintiff's bonus. Defendant attached the compensation plan to its motion which, as stated above, explicitly states that an employee's bonus will be prorated based on their active months of service when the employee takes a leave of absence. ECF No. 29-1, 29-2. In determining whether a defendant established a legitimate, nondiscriminatory reason for an adverse action, the Court, at this stage, does not consider the credibility of the proffered reason.  *See Cone v.*

26

*Longmont*, 14 F.3d 526, 530 (10th Cir. 1994). Instead, it is sufficient if the defendant explains its reasoning in terms that are not facially prohibited by the ADA. *See Etsitty v. Utah Transit Authority*, 502 F.3d 1215, 1224 (10th Cir. 2007). The Court concludes that Defendant's stated reason—compliance with its compensation plan—constitutes a legitimate, nondiscriminatory reason for the reduction of Plaintiff's bonus.

Because the Court concludes Defendant demonstrated a legitimate, nondiscriminatory reason for its actions, "the plaintiff must present enough evidence to support an inference that the employer's reason was merely pretext by showing either that a discriminatory reason more likely motivated the employer or that the employer's  proffered explanation is unworthy of credence." *Cone*, 14 F.3d at 530 (internal quotation marks, citation, and alteration omitted). "Pretext can be shown by such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence and hence infer that the employer did not act for the non-discriminatory reasons." *Morgan v. Hilti*, 108 F.3d 1319, 1323 (10th Cir. 1997) (internal quotation marks and citation omitted).  However, "mere conjecture that the employer's explanation is a pretext for intentional discrimination is an insufficient basis for denial of summary judgment." *Id.* (internal quotation marks and alterations omitted).

Upon review of Plaintiff's evidence, not only does Plaintiff fail to adduce evidence that could lead a reasonable factfinder to doubt Defendant's reason, but Plaintiff's allegations and evidence on this point actually support Defendant's contention that Plaintiff's bonus was reduced in accordance with the compensation plan. For instance, Plaintiff presents evidence that, during a quarter in which she took a leave of absence, she received a ten percent (out of a possible twenty percent) bonus. ECF No. 14 at 64.  By way of comparison, Plaintiff shows a seventeen percent

bonus from a quarter in which she alleges she took "little to no LOA." ECF No. 14 at 17, 66;
ECF No. 32 at 3. Thus, the evidence Plaintiff has adduced on this point actually supports
Defendant's argument that the determinative factor in the difference between the bonus amounts
was, consistent with the terms of the compensation plan, Plaintiff's leaves of absence. Plaintiff's
arguments and hand-written notations on the bonus documents are merely conjecture as to
Defendant's purpose and are insufficient to rebut Defendant's showing. ECF No. 14-1 at 64-66.
In sum, beyond the mere characterization of her 2013 bonus as discriminatory, Plaintiff has
failed to create a reasonable inference, and thus a genuine issue of material fact, that Plaintiff's
bonus amounts were calculated inconsistently with Defendant's neutral compensation plan.
Accordingly, the Court concludes that summary judgment is appropriate in regard to claims
arising out of Plaintiff's 2013 bonus.

## VI. CONCLUSION

Based on the foregoing, Defendant's Motion to Strike (ECF No. 34), Second Motion to
Dismiss (ECF No. 20), and Motion for Summary Judgment (ECF No. 28) are GRANTED.
Accordingly, Plaintiff's complaint is hereby dismissed with prejudice.

**IT IS SO ORDERED.**

_____
UNITED STATES MAGISTRATE JUDGE
Presiding by Consent